The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM J. MCSHERRY, JR. AND KRISTEN
MCSHERRY,

        Plaintiffs,

    v.

CAPITAL ONE FSB, CAPITAL ONE BANK NA,
EXPERIAN INFORMATION SOLUTIONS INC.,
and ATTENTION LLC,

        Defendants.

CASE NO. C05-1669C

ORDER

I.      INTRODUCTION

      This matter has come before the Court on Plaintiffs' motion to strike Capital One's third-party complaint and Capital One's motion for leave to file the third–party complaint. Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court has determined that no oral argument shall be necessary. For the reasons that follow, Plaintiffs' motion is GRANTED and Capital One's motion is DENIED.

ORDER - 1

II.     BACKGROUND

Plaintiffs brought this action for damages stemming from Defendants' alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667e, and "of state law obligations brought as supplemental claims." (Compl. ¶ 2.) Plaintiffs allege that Defendants Capital One and Experian wrongfully reported false information about Plaintiff William McSherry, Jr.'s creditworthiness and that Defendant Attention LLC wrongfully attempted to pursue collection actions against Plaintiff McSherry, Jr.

According to several documents in the record, including Plaintiffs' complaint, it appears that the debt allegedly attributed to Plaintiff William McSherry, Jr., may have been incurred by Plaintiff's father, William McSherry, Sr. (*See*, *e.g.*, Compl. ¶ 13.)

Defendant Experian filed its answer on November 10, 2005. Capital One filed its answer on November 30, 2005. Attention LLC filed its answer on January 4, 2006. According to a case scheduling order entered by the Court, the parties' "pleading amendment/3rd party action" was due by March 24, 2006. Defendant Capital One filed a third-party complaint against Plaintiff's father, Mr. McSherry, Sr. on March 24, 2006. Less than one week later, Plaintiffs filed the instant motion to strike the third-party complaint.

III.    ANALYSIS

A.     *Timeliness*

Capital One filed its third-party complaint against Mr. McSherry, Sr., without an accompanying motion to do so because it interpreted this Court's case scheduling order setting the March 24, 2006 deadline as an order modifying Rule 14(a) of the FEDERAL RULES OF CIVIL PROCEDURE. This rule provides in relevant part that

ORDER - 2

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.

Fed. R. Civ. P. 14(a).

This rule permits third-party complaints to be filed without leave of court only in the ten-day window after the would-be third-party plaintiff files its answer in the original action. The case scheduling order entered by this Court permits parties to move to file third-party complaints until the pleading amendment/third-party practice deadline. Motions to file third-party complaints made after this deadline must meet not only the standards relevant to the Rule 14(a) substance of the motion, but also meet Rule 16(b)'s requirement of a showing of good cause why the late-filed motion should be permitted.

In the present case, because Defendants appear to have made a good-faith error in interpreting the interaction between the Court's case scheduling order and Rule 14(a), the Court will construe Defendants' filing of the third-party complaint as their motion for leave to file said complaint. Because the "motion" was timely filed, Defendants need not meet the requirements of Rule 16(b).

B.    Compliance with Rule 14(a)

"[W]hile Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability." *Kim v. Fujikawa*, 871 F.2d 1427, 1434 (9th Cir. 1989). The rule itself specifies that the defending party may only use the rule to implead "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). This language is generally understood to mean that

[impleader] must involve an attempt to pass on to the third party all or part of the liability asserted against the defendant. Thus, it must be an assertion of the third-party defendant's

ORDER - 3

1
2

derivative liability to the third-party plaintiff.  An impleader claim cannot be used to assert any and all rights to recovery arising from the same transaction or occurrence as the underlying action.

3  3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 14.04[3][a] (Matthew Bender 3d ed. 1999).

4      In other words, in order to be permitted to assert a third-party complaint against Mr. McSherry,

5  Sr., Defendant Capital One must show that it has the right to sue Mr. McSherry, Sr., for derivative

6  liability for Plaintiffs' claims against it.

7      Plaintiffs' complaint alleges that Capital One is a "furnisher" of information under the FCRA

8  (Compl. ¶ 6) and that it is also a "creditor" under TILA (Compl. ¶ 8).  The complaint makes the following

9  claims against Defendant Capital One: (1) willful and/or negligent violation of the FCRA provisions

10 governing the disclosure of consumer reports, 15 U.S.C. § 1681b, and the responsibilities of furnishers of

11 information to consumer reporting agencies; (2) defamation of Plaintiffs by publishing to third parties

12 false information about their creditworthiness; (3) violation of the Fair Credit Billing Act; and (4)

13 invasion of Plaintiffs' privacy.  (Compl. ¶ 26.)  Plaintiffs allege that their "creditworthiness and privacy

14 have been repeatedly compromised" by Defendants' acts and omissions.  (Compl. ¶ 12.)  More

15 particularly, Plaintiffs claim that they "repeatedly disputed information reported or furnished regarding

16 their creditworthiness that associated Mr. McSherry's creditworthiness with his father, to no avail"

17 (Compl. ¶ 13); that "Capital One has a policy of refusing to properly investigate and/or take action with

18 regard to the erroneous association of family members with their children" (Compl. ¶ 14); that despite

19 Plaintiffs' repeated attempts to correct the information, "Capital One continued to wrongfully report false

20 information regarding his creditworthiness" (Compl. ¶ 15); and that "Capital One failed to conduct

21 reasonable investigation(s) of plaintiff's claims" (Compl. ¶ 22).

22     Thus, the question to be answered is whether Capital One has a right to contribution or

23 indemnification for any of these causes of action from Mr. McSherry, Sr.

24

ORDER - 4

1                    *1.    Federal statutory claims*

2          With respect to Plaintiffs' FCRA and Fair Credit Billing Act claims against Capital One, the Court

3   must determine whether either of these federal statutes either expressly or impliedly provides a right to

4   indemnity or contribution.  *See Doherty v. Wireless Broadcasting Sys. of Sacramento, Inc.*, 151 F.3d

5   1129, 1131 (9th Cir. 1998) (explaining "A defendant held liable under a federal statute has a right to

6   indemnification or contribution from another only if such right arises: (1) through the affirmative creation

7   of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law.").

8   So far, it does not appear that any court has found that there is a right to indemnity or contribution under

9   FCRA, and while Capital One does not concede this point, it also does not point to any authority

10  supporting a finding to such a right.

11                     *a.    Creation of right by Congress*

12         Neither the FCRA nor the Fair Credit Billing Act contain any language expressly providing for

13  contribution or indemnity.[1]  Thus, if either of these statutes are to provide such a right, it would be either

14  implicitly, or under the federal common law.  Courts addressing whether a statute implicitly provides a

15  right to contribution or indemnity apply an analysis developed in *Cort v. Ash*, 422 U.S. 66, 78 (1975).

16  *See*, *e.g.*, *Texas Indus. Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (finding no right to

17  contribution in Sherman Act); *Nw. Airlines, Inc. v. Transp. Workers Union of Am, AFL-CIO*, 451 U.S. 77,

18  90–91 (1981) (adapting *Cort* factors to find no right of contribution for employers in Title VII and Equal

19  Pay Act); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 143 (2nd Cir. 1999) (applying *Cort* factors to find

20  that Fair Labor Standards Act does not imply right of contribution or indemnification for employers liable

21  under FLSA); *Mortgages, Inc. v. United States District Court*, 934 F.2d 209, 212–14 (9th Cir. 1991)

22

23  [1] One example of a federal statute expressly providing for contribution is the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which provides in subsection (f)(8) that "[a] covered person who becomes jointly and severally liable for damages in any private action may recover contribution from any other

24  person who, if joined in the original action, would have been liable for the same damages."

ORDER - 5

1   (applying *Cort* factors to find that the False Claims Act provides no right to contribution or indemnity for

2   defendants against qui tam plaintiffs with "unclean hands"); *Kim v. Fujikawa*, 871 F.2d 1427, 1432 (9th

3   Cir. 1989) (applying *Cort* factors to conclude that ERISA does not imply right of contribution between

4   fiduciary trustees).

5          This analysis inquires into the following four factors: (1) whether the plaintiff is a member of the

6   class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative

7   intent, explicit or implicit, to create or deny the remedy sought; (3) whether the remedy sought is

8   consistent with the purposes of the legislative scheme; and (4) whether the cause of action is one

9   "traditionally relegated to state law, in an area basically the concern of the States, so that it would be

10  inappropriate to infer a cause of action based solely on federal law." *Cort*, 422 U.S. at 78.

11                                 *i.*      *FCRA*

12         Congress, in enacting the FCRA, found that "[c]onsumer reporting agencies have assumed a vital

13  role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here

14  is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness,

15  impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3)–(4).  Congress

16  explained that the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable

17  procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other

18  information in a manner which is fair and equitable to the *consumer*." 15 U.S.C. § 1681(b) (emphasis

19  added).  It is clear from this language that Congress's intent in enacting FCRA was to protect consumers.

20         In addition, although FCRA's statement of purpose contains repeated express references to

21  consumer reporting agencies, its provisions regarding furnishers of information clearly indicate

22  Congress's intent to regulate furnishers as well as the reporting agencies themselves. *Nelson v. Chase*

23  *Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002).  More specifically, FCRA's

24

ORDER - 6

furnisher provisions were intended to regulate furnishers vis à vis consumers.  *See id.*, 282 F.3d at 1059

(explaining that even though the statute limits the availability of private enforcement, "[m]ost of the

provisions of § 1681s-2(a) are for the protection of consumers" and emphasizing that § 1681s-2(b)

imposes requirements with respect to consumers because "[i]t is hard to say that, when information in a

consumer's file is the issue, there is no requirement 'with respect to a consumer'").  Here, Capital One, a

furnisher of information and the party seeking to assert a claim for contribution and/or indemnity is a

member of precisely the class of entities whose behavior Congress sought to *regulate*.  Therefore, it

cannot be said that Capital One is a member of the class for whose benefit FCRA was enacted.  The first

prong of the *Cort* analysis thus weighs against allowing a claim for contribution or indemnity under

FCRA.

The second prong of the *Cort* analysis, applied to the present case, asks whether there is any

explicit or implicit Congressional intent to create a right to contribution or indemnification.  In answering

this question, the Court must be mindful that "[w]here a statute expressly provides a particular remedy or

remedies, a court must be chary of reading others into it."  *Transamerica Mortgage Advisors, Inc. v.*

*Lewis*, 444 U.S. 11, 19 (1979).  "The presumption that a remedy was deliberately omitted from a statute is

strongest when Congress has enacted a comprehensive legislative scheme."  *Nw. Airlines, Inc. v.*

*Transport Workers*, 451 U.S. at 97.  Courts generally agree that FCRA is a comprehensive legislative

scheme.  *See, e.g.*, *Skwira v. U.S.*, 344 F.3d 64, 74 (1st Cir. 2003) (calling FCRA a "complex statutory

scheme"); *FTC v. Manager, Retail Credit Co., Miami Beach Branch Office*, 515 F.2d 988, 989 (D.C. Cir.

1975) (characterizing the FCRA as a "comprehensive series of restrictions on the disclosure and use of

credit information assembled by consumer reporting agencies" and noting that the Act includes "an

elaborate scheme for administrative enforcement of the FCRA").  Indeed, in addition to its provisions

covering civil liability, 15 U.S.C. §§ 1681n, 1681o, FCRA sets forth a comprehensive scheme for

ORDER - 7

administrative enforcement, 15 U.S.C. § 1681s.  Nowhere in the statute, however, is there any language addressing a right to contribution or indemnity.  Viewed against the indisputably comprehensive nature of the statutory scheme, Congress's failure to include such a remedy can only be understood to have been deliberate.

Perhaps more importantly, Congress's treatment of furnishers of information was especially careful.  FCRA already carefully limits the availability of private rights of action against furnishers through the "filtering mechanism" of § 1681s-2(b).  *See Nelson*, 282 F.3d at 1060.  In light of the *Nelson* Court's remark that "[t]he statute has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of credit information," *id*, this Court cannot suppose that Congress's omission of a statutorily-enunciated right to contribution or indemnity for furnishers was anything but intentional.  Accordingly, the Court finds that the second *Cort* factor also weighs against allowing a claim for contribution or indemnification under the FCRA.

The third *Cort* factor, applied to this case, asks whether permitting a claim for contribution or indemnification is consistent with the stated purpose of the FCRA to protect consumers.  The Ninth Circuit has said that

> implying a right of contribution is particularly inappropriate where . . . the party seeking contribution is a member of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class, and where there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers.

*Kim*, 871 F.2d at 1433 (citations omitted).  In the present case, it is clear that Capital One, the party seeking contribution, is a member of a class (furnishers) whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class (consumers).  *See, e.g.*, *Nelson*, 282 F.3d 1060 (recognizing the gulf between consumers and furnishers in discussing the 1996 amendments to the FCRA: "As consumers would not be made subject to suit by consumers, and as CRAs and users were already

suable, who else except furnishers could Congress have had in mind when it introduced 'any person' into the statute?"). In addition, there is no legislative history suggesting that Congress was interested in "softening" the blow for joint wrongdoers. On the contrary, the *Nelson* Court's analysis of the 1996 amendments suggests that Congress was interested in providing consumers with some form of private enforcement action against furnishers rather than broadening the scope of furnishers' protection against lawsuits. Accordingly, the Court finds that permitting furnishers to assert claims for contribution or indemnity would be contrary to the stated purpose of the FCRA to protect consumers and therefore impermissible under *Cort*.

The final *Cort* factor asks whether there is a state-law impediment to the finding of an implied right to contribution or indemnification in FCRA. Because all three of the other *Cort* factors weighed against a finding that a right to contribution is implied, the Court need not address this factor. Analysis of this last factor in this context would only be necessary or relevant if the other *Cort* factors led to a finding that an implied right to contribution could be found. In that case, if analysis of this fourth factor showed that there was a state-law impediment to the finding of such an implied right, it could be inappropriate for the Court to conclude that such a right exists under the federal statute. As it is, however, the Court finds that the other *Cort* factors weigh decisively against a finding that FCRA implies that furnishers of information may have a right to contribution or indemnity. Accordingly, the Court finds that FCRA does not imply a right to contribution or indemnity for furnishers of information to consumer reporting agencies.

### ii.    *Fair Credit Billing Act*

The Fair Credit Billing Act is part of the larger Truth-in-Lending Act, 15 U.S.C. § 1601-1667e. Like FCRA, TILA does not expressly provide for a right to contribution. 15 U.S.C. § 1640. Thus, the Court must determine whether under *Cort*, TILA implies a right to contribution.

ORDER - 9

TILA itself, along with FCRA and other related statutes, is part of chapter 41 of Title 15 (Commerce and Trade). Chapter 41 is entirely devoted to consumer credit protection. As such, and as is otherwise clear from the subject matter of TILA and the Fair Credit Billing Act themselves, the purpose of these statutes generally is to protect consumers and to give them rights against creditors, among others. For the purposes of the *Cort* analysis, the Court finds that TILA (and the Fair Credit Billing Act) is virtually indistinguishable from FCRA. Accordingly, the Court finds that as in the analysis for FCRA, the first three *Cort* factors weigh decisively against a finding that the Fair Credit Billing Act confers upon creditors like Capital One an implied right to contribution or indemnity.

b.    *Federal common law*

It is the rare case where a court finds that federal common law provides for a right of contribution. "Application of a federal rule is appropriate where a uniform national rule is necessary to further the interests of the Federal Government or where there is a significant conflict between some federal policy or interest and the use of state law." *Pankow Constr. Co. v. Advance Mortgage Corp.*, 618 F.2d 611, 613 (9th Cir. 1980) (citations omitted). In the specific context of a right of contribution, the Seventh Circuit stated, "all that a right of contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced, . . . it will not be." *Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005). In the present case, it is neither apparent that the Court need craft a federal common law remedy for purposes of uniformity nor that Congress would have wanted a right of contribution to be created or enforced. Therefore, the Court finds that there is no federal common law right to contribution available to furnishers of information under FCRA or to creditors under TILA.

* * * * *

1    Having found that Capital One has no right to contribution or indemnity with respect to Plaintiffs'

2    federal claims, the Court must determine whether Capital One is permitted to implead Mr. McSherry, Sr.,

3    on the state claims.

4                    2.    *State common law claims*

5    In addition to Plaintiffs' federal claims, Plaintiffs' complaint asserts state common law causes of

6    action for defamation and invasion of privacy.  Despite the parties' extensive briefing on the issue of

7    whether the Court has jurisdiction over the claims, the dispositive issue is whether impleader on these

8    claims should be permitted.  If impleader is permitted, this Court's supplemental jurisdiction over the

9    impleader claims necessarily follows.  MOORE'S FEDERAL PRACTICE § 14.41[4][a] (explaining that

10   "[b]ecause the liability of the third-party defendant to the defendant on the impleader claim is derivative

11   of the defendant's underlying liability to the plaintiff in the underlying case, the impleader claim by

12   definition is concerned with the same transaction or occurrence, or common nucleus of operative fact, as

13   the underlying suit.").

14   Thus, the question that must be answered in the present case is not whether jurisdiction exists, but

15   rather whether impleader is permitted.  Whether impleader will be permitted is a somewhat narrower

16   question than whether the Court has jurisdiction.

17   Capital One argues that "[a]ny losses Capital One sustains as a result of the state law claims arise

18   because of the actions/inactions of McSherry, Sr.  Absent McSherry, Sr.'s actions related to the Accounts,

19   Capital One would not have purportedly defamed or invaded Plaintiffs' privacy."  (Opp'n 9.)

20   In general, "[i]ndemnity requires full reimbursement and transfers liability from the one who has

21   been compelled to pay damages to another who should bear the entire loss."  *Cent. Wash. Refrigeration,*

22   *Inc. v. Barbee*, 946 P.2d 760, 762 (Wash. 1997).  As in single tortfeasor cases, in multiple tortfeasor

23   cases, liability may only be imposed on a party "to the extent that his actions were a proximate cause of

24

1   the plaintiff's harm."  16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW &

2   PRACTICE § 12.12, at 253 (2000).  Thus, the question presented with respect to Capital One's attempt to

3   implead Mr. McSherry, Sr., is whether Mr. McSherry, Sr.'s alleged utilization of Mr. McSherry, Jr.'s

4   personal information to obtain credit accounts may properly be considered to be a proximate cause of

5   Plaintiffs' claims against Capital One.

6          Here, Plaintiffs' allegations against Capital One all have to do with Capital One's alleged actions

7   or omissions taking place after Plaintiffs notified Capital One of the alleged errors.  (*See* Compl. ¶ 14

8   (alleging refusal "to properly investigate and/or take action with regard to the erroneous association o

9   family members with their children), ¶ 15 (alleging that "[d]espite repeated disputes to it . . . Capital One

10  continued to wrongfully report false information . . . [and] Capital One's agent . . . continued to harass

11  plaintiff), ¶ 19 (alleging that representatives of Capital One's agent "contacted plaintiffs repeatedly

12  despite requests to stop and threatened to garnish their wages"), ¶ 20 (alleging that Capital One's agent

13  "continued to pursue collection after plaintiff provided repeated notice he did not owe the account"), and

14  ¶ 21 (alleging "In November 2004 [Capital One's agent] illegally procured plaintiff's credit report").)

15  While it does appear that Capital One's allegedly tortuous actions or omissions would not have occurred

16  but for Mr. McSherry, Sr.'s alleged actions, this is not enough.

17         Indeed, Plaintiffs' complaint is carefully constructed to complain only about the effects of Capital

18  One's failures to respond in an adequate and lawful manner to their disputes.  Like other courts facing

19  very similar factual scenarios, this Court finds that Capital One cannot plausibly or correctly argue that

20  Mr. McSherry, Sr., "had anything whatever to do with [Capital One's] alleged failure to follow-up

21  adequately on [Plaintiffs'] complaint to [Capital One] that some accounts on [their] credit report" had not

22  been obtained by Mr. McSherry, Jr.  *Fields v. Experian Info. Solutions, Inc.*, 2003 WL 1960010 at *2

23  (N.D. Miss. 2003).  Or, as another court put it, Mr. McSherry, Sr., did not "actively lead" Capital One to

24

ORDER - 12

commit the alleged defamation and invasions of Plaintiffs' privacy.  *McMillan v. Equifax Credit Info.*

*Servs., Inc.*, 153 F. Supp. 2d 129, 132 (D. Conn. 2001).  Even though Capital One may be "technically

correct" about Mr. McSherry, Sr.'s alleged actions as but-for cause, "that is only because but for the . . .

alleged acts, the possibility that [Capital One] would conduct inadequate investigations in response to

disputed charges or impermissibly access plaintiff's credit report would never have arisen." *Id.* at 133.

Here, as in *Fields*, it does not appear that Plaintiffs "contend that [Capital One] was wrongful or

unreasonable in initially relying on the fraudulent transactions."  *Fields*, 2003 WL 1960010 at *2.

For these reasons, the Court finds that Capital One's proposed third-party complaint alleges

actions "that are too attenuated from the core facts alleged as a basis of liability in the original complaint."

*Id.*  Mr. McSherry, Sr.'s alleged actions are not a proximate cause of Plaintiff's damages resulting from

Capital One's alleged mistreatment of Plaintiffs' information or its alleged refusal to rectify errors.

Because Mr. McSherry, Sr.'s alleged liability to Capital One, if any, is not derivative of Capital One's

liability, if any, to Plaintiffs, Capital One may not obtain indemnity from Mr. McSherry, Sr.  Accordingly,

impleader under Rule 14 would be improper.

IV.    CONCLUSION

In accordance with the foregoing, Plaintiffs' motion to strike Capital One's third-party complaint

is hereby GRANTED and Capital One's motion for leave to file its third-party complaint is hereby

DENIED.

SO ORDERED this 24th day of May, 2006.

UNITED STATES DISTRICT JUDGE

ORDER - 13